UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, *et al.*,

    Plaintiffs,

v.

MICHAEL ANGELO, *et al.*,

    Defendants.
_____/

Case No. 19-12051

Hon. George Caram Steeh

OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART LIBERTY MUTUAL'S MOTION TO DISMISS (ECF No. 44)

Plaintiffs Liberty Mutual Fire Insurance Company, LM General Insurance Company, LM Insurance Corporation, and Safeco Insurance Company of Illinois (collectively "Liberty Mutual") seek dismissal of the counterclaim filed by Defendants Michael Angelo, US Health Pharmaceuticals d/b/a Meds Direct, Greater Lakes Ambulatory Surgical Center, and Tox Testing, Inc. ("Providers"). Pursuant to L.R. 7.1 and Administrative Order 20-AO-021, the court will determine the motion on the papers submitted.

-1-

## BACKGROUND FACTS

Liberty Mutual filed this action against several health care providers, alleging fraud and unjust enrichment.  Specifically, Liberty Mutual alleges that the defendants engaged in a fraudulent scheme by billing the plaintiff insurance companies under the Michigan No-Fault Act for medically unnecessary treatment and procedures.  According to Liberty Mutual, "[t]hese patients are eligible for personal injury protection benefits ("No-Fault Benefits") under personal automobile policies issued by Liberty Mutual, however, the services [at] issue are either not performed, performed outside an acceptable standard of care or are performed regardless of medical necessity." ECF No. 21, Amended Complaint at ¶ 2. Liberty Mutual alleges that it has been damaged in the amount of $1,475,634.45 in No-Fault payments to the defendants.  Liberty Mutual also seeks a declaration that the defendants are not entitled to payment for any unpaid claims submitted to date.  Amended Complaint at ¶¶ 107-13.

Providers have filed a counterclaim, alleging breach of contract, unjust enrichment, and fraudulent misrepresentation.  Providers allege that although Liberty Mutual is contractually obligated to pay No-Fault benefits on behalf of its insureds, it engages in tactics to "'delay, deny, and defend' irrespective of whether their insureds' claims were legitimate."

Counterclaim at ¶ 39. Providers allege that they "can present evidence of Liberty Mutual's and Safeco's failures to timely pay pursuant to its duties under the law or under its contract/policy with its insureds." *Id.* at ¶ 59. Liberty Mutual seeks dismissal of Providers' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## LAW AND ANALYSIS

I. Standard of Review

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations

---

[1] Because Liberty Mutual filed an answer to the counterclaim, its motion is properly brought pursuant to Rule 12(c), which is decided pursuant to the same standard as a motion under Rule 12(b)(6). *See Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).

-3-

respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

## II. Breach of Contract

To state a breach of contract claim under Michigan law, the complaining party must allege that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 100 (2016). Providers have alleged these elements in their countercomplaint. Providers allege that pursuant to Liberty Mutual's policies with its insureds, it is obligated to pay for reasonable and necessary medical expenses. Providers further allege that they provided reasonable and necessary medical treatment to Liberty Mutual's insureds, they submitted bills for such treatment to Liberty Mutual, and that Liberty Mutual refused to pay, in breach of its contracts with its insureds. *See* Counterclaim at ¶¶ 75-84. Providers allege that Liberty Mutual's insureds assigned their breach of contract claims to Providers. *Id.* at ¶ 80. According to the countercomplaint, Liberty Mutual owes Tox Testing $259,386.03, Meds Direct $112,486.26, and Greater Lakes Ambulatory

Surgical Center $78,224.00.  Additionally, Safeco owes Tox Testing $23,230.66 and Meds Direct $6,793.09.  In an exhibit to the countercomplaint, Providers submit a chart listing the last name of the insured, date of birth, date of service, and the amount allegedly owed by Liberty Mutual.  ECF No. 29-5.

Liberty Mutual argues that Providers must "*prove* the existence and terms of a contract" and that they have not specifically identified the insurance policies or provisions that were breached.  See *Van Buren Charter Twp. v. Visteon Corp.*, 319 Mich. App. 538, 554 (2017) (emphasis added).  To the contrary, Providers need not prove their claim in their complaint; *Van Buren* was decided on a motion for summary disposition in state court, not under federal pleading standards.  Further, Providers have identified the individuals with insurance policies with Liberty Mutual and the claims it alleges Liberty Mutual has not paid.[2]  ECF No. 29-5.  This sufficiently identifies the insurance policies at issue and gives Liberty Mutual fair notice of the basis of Providers' breach of contract claim, which has been plausibly alleged.

---

[2] Liberty Mutual has asserted a declaratory judgment claim, seeking a ruling that "Defendants are not entitled to reimbursement for any unpaid claims and charges submitted to Liberty Mutual to date and through the trial of this action for any services provided."  ECF No. 21 at PageID 943.  Providers contend that their breach of contract counterclaim relates to the same unpaid claims.  ECF No. 49 at PageID 1694.

III.    <u>Unjust Enrichment</u>

Liberty Mutual also seeks dismissal of Providers' unjust enrichment claim. To state a claim for unjust enrichment, a plaintiff must allege: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003). A plaintiff may recover on an unjust enrichment claim "only if there is no express contract covering the same subject matter." *Id.*

Liberty Mutual argues that because Providers' claims are governed by express contracts (the insurance policies), they cannot maintain an unjust enrichment claim. As discussed above, however, Liberty Mutual has not unequivocally acknowledged the existence of the contracts at issue here. Although Liberty Mutual asserts that it is not disputing the existence of the insurance policies, it also argues that Providers "have not identified any of the specific insurance policies or provisions that were allegedly breached by Liberty Mutual." ECF No. 44 at PageID 1604. Under the circumstances, Providers are entitled to plead an unjust enrichment claim as an alternative to their breach of contract claim. *See* Fed. R. Civ. P. 8(d)(2); *Durant v. Servicemaster Co.*, 159 F. Supp.2d 977, 983 (E.D. Mich. 2001); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 834

-6-

(E.D. Mich. 2014) ("A plaintiff also may bring a breach of contract claim and an unjust enrichment claim in cases where the defendant has 'kept its options open, and may deny the existence of a contract.'").

## IV. Fraudulent Misrepresentation

Providers' fraudulent misrepresentation claim is based upon the allegation that Liberty Mutual falsely represented to its insureds that it would provide coverage for reasonable and necessary medical treatment under Michigan law. Liberty Mutual argues that Providers failed to plead fraud with specificity and that they lack standing to pursue this claim on behalf of the insureds. To satisfy prudential standing requirements, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 837 (E.D. Mich. 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Providers argue that they have standing as a result of the assignments of claims executed by the insureds. Under Michigan law, "[a]n assignment is a contract between the assignor and the assignee and is interpreted according to the rules of contract construction." *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, 896 F. Supp. 2d 650, 658

(E.D. Mich. 2012). The court enforces unambiguous contract terms as written. *Id.* at 659.

There are three versions of the assignments, which were attached to the original counterclaim. *See* ECF No. 11-5. The first version provides as follows:

> *This is an assignment of the right to enforce payment of charges incurred for Services*, for which charges are payable under any policy of insurance, contract, legal claim and/or statute. Such assignment shall include, in Assignee's sole discretion, the right to appeal a payment denial under any procedure outlined in any insurance policy, contract or statute and/or the right to file suit to enforce the payment benefits due or past due for the Services incurred and resulting charged.

*See id.* at PageID 514 (emphasis added). The second version provides:

> ASSIGNMENT OF RIGHTS: You are assigned to exclusive, irrevocable rights. Any cause of action that exists in my favor against any insurance company or other person or entity *to the extent of your bill for total services*, including the exclusive, irrevocable right to receive payment for such services, make demand in my name for payments, and prosecute and receive penalties, interest, court costs, or other legally compensable amounts owned by an insurance company or other person or entity.

*Id.* at PageID 757 (emphasis added). The third version provides:

> Assignor acknowledges that he/she has received, and may receive in the future, services from Assignee, including blood testing and toxicology services. Assignor acknowledges that Assignee has provided such services

-8-

> upon a promise of payment together with additional promises from Assignor, *including the ability to enforce payment rights and obligations against any insurer that might be liable for the charges described by this Agreement*. . . . Assignor hereby assigns to Assignee all rights Assignor possesses, under the Michigan No-Fault Act or otherwise, including the right to direct payment for all such charges, the right to consider appeal of a payment denial under any procedure outlined in any insurance policy, and the right to sue to enforce any right to payment Assignor otherwise possesses.

*Id.* at PageID 727 (emphasis added).

Liberty Mutual argues that although each of these assignment provisions gives Providers the right to seek payment for services rendered to the insureds, the language does not provide for the assignment of tort claims. *See Macomb*, 896 F. Supp.2d at 660 ("[T]he ability of an assignee to enforce contractually-created rights does not necessarily permit the assignee to also bring tort or statutory claims that are merely related somehow to the contractual relationship but that arose outside of the rights created by the contract.").

Providers argue that the assignments give them the right to assert "any cause of action" the insureds may have against Liberty Mutual. Providers ignore the context of this assignment language, which is found in only one of the three versions. This provision assigns "[a]ny cause of action that exists in my favor against any insurance company or other

-9-

person or entity *to the extent of your bill for total services. . . .*" ECF No. 11-5 at PageID 757 (emphasis added).  The assignments unambiguously give Providers the right to seek payment for their services.  None of the three versions can be read to assign any or all potential claims, including tort claims, to Providers.  "[W]here an assignment clause does no more than assign rights arising from contracts, it cannot be read to include an assignment of non-contractual claims."  *Macomb*, 896 F. Supp.2d at 661.  Because the assignments do not give Providers the right to pursue tort claims on behalf of the insureds, Providers lack standing to assert a claim for fraudulent misrepresentation.[3]

## ORDER

Accordingly, IT IS HEREBY ORDERED that Liberty Mutual's motion to dismiss (ECF No. 44) is GRANTED IN PART with respect to Providers' fraud claim and DENIED IN PART with respect to Providers' breach of contract and unjust enrichment claims.

Dated:  April 21, 2020

                                       s/George Caram Steeh
                                       GEORGE CARAM STEEH
                                       UNITED STATES DISTRICT JUDGE

---

[3] Therefore, the court need not consider whether Providers pleaded fraud with particularity under Fed. R. Civ. P. 9(b).

-11-

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 21, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk